United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY M. FERGUSON,<br><br>     Plaintiff(s),<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant(s).<br>_____/ | No. C-12-02295 DMR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shirley M. Ferguson ("Plaintiff") seeks review of her application for Supplemental Security Income ("SSI") disability benefits and disability insurance benefits. Defendant Social Security Commissioner ("Defendant" or "Commissioner") denied her application after determining that Plaintiff was not disabled under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382c(a)(3)(A). Plaintiff now requests judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both parties filed motions for summary judgment. For the reasons stated below, the court grants Defendant's motion and denies Plaintiff's motion.

## I. Procedural History

On July 2, 2008, Plaintiff filed an application for SSI benefits under Title XVI of the Act, and an application for a period of disability and disability insurance benefits under Title II of the

Act, alleging disability beginning December 13, 2002.[1] Administrative Record ("A.R.") 177-87. The agency denied Plaintiff's claim on November 10, 2008, and subsequently denied it again upon reconsideration on July 16, 2009. A.R. 62-75, 81-91. On October 19, 2010, an administrative law judge (ALJ) held a hearing at which Plaintiff, represented by an attorney, testified, as did Dr. Walter Lewin, M.D., a medical expert, and vocational expert Edward Bennett. A.R. 30-61. On April 12, 2011, the ALJ issued a written decision finding that Plaintiff had severe impairments consisting of pseudoseizures, mixed anxiety and depression, panic disorder, and prescription medication addiction, but denied her claim and held that Plaintiff was not disabled because she could perform a significant number of jobs given her residual functional capacity ("RFC") for a reduced range of work at all exertional levels. A.R. 12-22. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision. A.R. 4-8. Plaintiff then filed this action.

## II. Factual Background

**A. Plaintiff's Background and Activities of Daily Living**

The record contains the following information. Plaintiff was born in 1965. A.R. 177. Plaintiff has not worked since 2002. A.R. 35. Prior to 2002, she worked as a preschool teacher for 18 years, but stopped after having seizures. A.R. 35-36. She had seizures at least twice a week, and tremors almost every day. A.R. 37. Plaintiff testified that after having a seizure, it could take her two to three days to recover, during which time she would be restricted to her bed, would experience headaches and body aches, and would be unable to walk or think straight. A.R. 36, 42. Plaintiff stated she had fallen in the shower "quite a few times" and would urinate on herself while attending church. A.R. 40, 43.

During the relevant time period, Plaintiff lived in a house with her fiancé and his mother. A.R. 35. During a typical day, Plaintiff woke up, took a shower, ate breakfast, then laid down and watched TV for a while. A.R. 45. She also tried to go outside with her dog in the yard and do chores, and then laid down in the afternoon. A.R. 45. In the evenings, her fiancé cooked or brought

---

[1] At the hearing, Plaintiff amended her onset date to August 27, 2005, the day after the SSA had denied her prior disability application. A.R. 13, 33.

2

1  home dinner, and Plaintiff ate and went to bed.  A.R. 45.   Plaintiff was able to prepare simple meals
2  of sandwiches, soups, or microwaveable dinners, go outside for walks, and use a computer for e-
3  mail.  A.R. 817.  She talked on the phone with her sister, her boyfriend, and another friend.  A.R.
4  817.

5        Plaintiff testified that she experienced panic attacks when in large groups of people, the
6  symptoms of which included hyperventilation.  A.R. 44.  Plaintiff was scared of elevators and could
7  not fly.  A.R. 44.  Plaintiff had a hard time pushing a vacuum, and was unable to carry laundry up
8  and down steps.  A.R. 46.  Plaintiff testified that she shopped for groceries and clothing, and went to
9  the movies and church.  A.R. 46-47.  She had friends and got along well with her family.  A.R. 47.

10        Plaintiff stated that she had previously been addicted to marijuana and alcohol, and had used
11  "crank" and pain medication, but had "been clean 19 years."  A.R. 41.

12  **B. Plaintiff's Relevant Medical History**

13     **i. Dr. Dolnak**

14  In September 2008, Plaintiff had a psychiatric consultative examination with Dr. Doug
15  Dolnak, D.O.  A.R. 816-820.  Plaintiff's chief complaint was seizure disorder.  A.R. 816.  Plaintiff
16  also alleged that she experienced panic attacks lasting 5-20 minutes, sometimes coming out of the
17  blue, and other times when she was in groups or crowds.  A.R. 816.  Regarding her past medical
18  history, Plaintiff reported a grand mal seizure disorder, chronic musculoskeletal pain, and
19  headaches. A.R. 817.  Plaintiff denied ever having been arrested, and denied alcohol abuse,
20  substance abuse, and IV drug use.  A.R. 818.  Dr. Dolnak found that Plaintiff's thought content was
21  clear and goal-directed.  A.R. 818.  She was oriented to person, place, and time, and was able to
22  repeat 3/3 words immediately as well as after five minutes.  A.R. 818.  Dr. Dolnak noted mild
23  difficulty with attention and concentration during the interview.  A.R. 819.  Dr. Dolnak reported that
24  Plaintiff's "problem is treatable . . . . Her condition may improve within the next 12-24 months . . . ."
25  A.R. 819.  Dr. Dolnak concluded that Plaintiff could perform simple repetitive tasks, but would have
26  some mild difficulty with detailed and complex tasks secondary to mild difficulty with attention and
27  concentration.  A.R. 819.  She could accept instructions from supervisors, but would have difficulty
28  interacting with coworkers and the public.  A.R. 820.  Plaintiff would have difficulty performing

1 work activities on a very consistent basis without special or additional supervision, and could not
2 maintain regular attendance in the workplace or complete a normal workday routine without
3 interruptions. A.R. 820.

### ii. Dr. Kravatz

In October 2008, Nadine Kravatz, Psy.D., a State agency medical consultant, completed a psychiatric review technique form and a mental residual functional capacity assessment. A.R. 827-40. Dr. Kravatz reviewed Dr. Dolnak's report, finding that Plaintiff was pleasant, cooperative, and not agitated, with normal speech and mildly anxious mood and affect. A.R. 837, 840. Her thought content was clear and goal oriented, her memory was intact, and there was only mild difficulty in concentration. A.R. 837, 840. Although Plaintiff endorsed symptoms of anxiety and panic attacks in groups or crowds, her activities of daily living suggested a "high level of functioning," including taking walks outside, going to shopping malls or stores with her niece or a friend, checking her computer and looking at her emails, visiting her boyfriend's parents, and attending church. A.R. 837, 840. Plaintiff reported a decrease in her other interests, like movies, shopping, and water-skiing. A.R. 837, 840. Plaintiff's mental status exam was "relatively intact," and there was no significant evidence of impairment in her cognitive or attentional capacity. A.R. 837, 840. There was evidence suggesting that Plaintiff was experiencing anxiety and depressive symptoms, but that those symptoms would not preclude employment at a competitive level. A.R. 837, 840. Dr. Kravatz concluded that the medical evidence indicated only moderate limitation in the ability to understand, remember and carry out detailed instructions, and interact appropriately with the public. A.R. 838-39. Dr. Kravatz concluded that Plaintiff could sustain attention and concentration for simple work for two-hour increments during a normal workday and workweek and relate to supervisors and coworkers, but that she would likely function best in an environment with reduced public contact. A.R. 837, 840.

### iii. Dr. Scott

In May 2009, Mark Scott, Ph.D., a licensed psychologist, examined Plaintiff. A.R. 934-36. Dr. Scott stated that it was "noticeable that in medical records included for review" that Plaintiff's medical difficulties were described as "a 'pseudo seizure' disorder," and that it was "unclear

4

whether she has a seizure disorder or whether she suffers from 'pseudo seizures'." A.R. 934, 936. Dr. Scott reported that Plaintiff claimed that her short-term memory was impaired, but that her attention and concentration were adequate when she watched TV or read the paper. A.R. 934. Plaintiff denied having a legal history, and denied the use of street drugs and alcohol. A.R. 935. Plaintiff spent her days talking with her boyfriend's mother, reading, grocery shopping, attending church and occasionally bowling. A.R. 935. Her thoughts were clear and goal directed, but she had blunted affect and depressed mood. A.R. 935. Test results showed that Plaintiff was oriented to time, place, and person, and suggested no impingement of her short-term memory processing. A.R. 936. Dr. Scott concluded that Plaintiff would be able to understand and carry out both simple and complex instructions. A.R. 936. Plaintiff would be able to respond appropriately to coworkers, supervisors, and the public, and would be able to deal with the usual work stressors. A.R. 936.

### iv. Dr. Lewin

The medical expert, Dr. Lewin, testified at the hearing that Plaintiff had symptoms of an organic mental disorder, an anxiety-related affective disorder, and a somatoform disorder. A.R. 48. Dr. Lewin opined that Plaintiff would have moderate limitations in activities of daily living, moderate limitations in social functioning, marked limitations in concentration, and that Plaintiff had no episodes of decompensation. A.R. 49. Dr. Lewin further opined that because "there were so many emergency room visits" "I don't think a person could maintain a regular work schedule." A.R. 49-50. Dr. Lewin testified that "full-time work would be impossible" given the interruption from seizures and postictal symptoms and "repetitive series of trips to the emergency room." A.R. 51-52. Dr. Lewin then stated that Plaintiff had marked limitations in her ability to complete a normal workweek and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. A.R. 50.

Dr. Lewin acknowledged a conflict existed between Plaintiff's statements regarding postictal periods and the repeated reports from emergency room staff that after Plaintiff's alleged seizures, none of the staff observed any of the postictal manifestations she alleged. A.R. 52. However, Dr. Lewin also noted that "pseudo-seizures are not malingering, they're not factitious, and they're not a conversion disorder, but they are a physical manifestation of a psychological problem . . . ." A.R.

5

1  51. The ALJ raised a concern about Plaintiff's "medication search" behavior, and Dr. Lewin
2  responded: "I thought about that a great deal, but I didn't think that this was enough or typical to
3  explain all of the other things such as limitation of driving, having somebody in the shower with
4  [her], and so forth." A.R. 53.  Dr. Lewin also testified that he did not believe Plaintiff's condition
5  could be explained as attention-seeking behavior. A.R. 53.

### v. Dr. Spivey

In December 2010, following the hearing before the ALJ, Patricia Spivey, Psy.D., examined Plaintiff. A.R. 1349-55. Dr. Spivey described Plaintiff as "healthy and confident" and found that Plaintiff's attitude and behavior were cooperative and pleasant, her affect was somewhat flat, and her thought content was linear and goal directed. A.R. 1350. Plaintiff's memory and judgment were good, and her insight was fair. A.R. 1350. Plaintiff's full scale IQ was 90, and her ability to reason was very good. A.R. 1351. Testing suggested that Plaintiff tended to over-endorse symptoms, and Plaintiff's score on a certain index "should raise concerns about the validity of self-reported symptoms." A.R. 1351. Dr. Spivey reported that Plaintiff appeared bright and capable, that she "may be on the upswing after a severe adjustment disorder." A.R. 1352. Dr. Spivey found that Plaintiff had mild impairment in the following work-related abilities: (1) ability to maintain pace or persistence to complete complex task; (2) ability to adapt to changes in job routine; (3) ability to withstand the stress of a routine work day; (4) ability to communicate effectively in writing; and (5) ability to interact appropriately with co-workers, supervisors and the public on a daily basis. A.R. 1352. Dr. Spivey also found that Plaintiff had mild/moderate impairment in her ability to maintain emotional stability/predictability. A.R. 1352. Dr. Spivey concluded that Plaintiff should be able to work based on the level of her psychological functioning.

### vi. Emergency Room and Medical Center Records

The medical evidence of record contains documentation of Plaintiff's frequent visits to at least seven hospitals and emergency rooms between December 12, 2002 and August 31, 2010. *See* A.R. 382-93, 394-455, 492-537, 538-584, 585-815, 864-933, 979-1348. Most often, Plaintiff reported having seizures and being in pain as a result. However, several doctors noted that Plaintiff's physical or mental symptoms were inconsistent with those of patients who had had the

number and type of seizures that Plaintiff reported, and that no medical personnel had witnessed Plaintiff's seizures. *See, e.g.* A.R. 587, 1037, 1048, 1343, 52 (ALJ noting that in Plaintiff's emergency room records "there were never observations of postictal [post-seizure] manifestations"). Other doctors noted the suspicious timing of Plaintiff's visits to the emergency room. *See, e.g.* A.R. 1019 (Plaintiff routinely showed up at the beginning of each month requesting narcotics, but then was not seen for the rest of the month), 519 (same). Several doctors recorded their concerns that Plaintiff demonstrated drug-seeking behavior or was becoming addicted to pain medications. *See, e.g.* A.R. at 606-07, 622, 1048, 1013, 1300.

### III. The Five-Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater,* 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

3.  At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4.  At the fourth step, the ALJ considers an assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5.  At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett,* 180 F.3d at 1098-99.

### IV.  The April 12, 2011 ALJ Decision

In the April 12, 2011 decision, the ALJ applied the five-step sequential evaluation to determine whether Plaintiff was disabled. A.R. 12-22. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 13, 2002. A.R. 14. At Step Two, the ALJ found that Plaintiff's had the following severe impairments: pseudoseizures, mixed anxiety and depression, panic disorder, and prescription medication addiction. A.R. 14. At Step Three, the ALJ found that Plaintiff's impairment did not meet or equal a presumptively disabling impairment in the Listings. A.R. 15. The ALJ then found that Plaintiff had an RFC that allowed her "to perform a full range of work at all exertional levels, but [that Plaintiff] cannot be exposed to hazards and is limited to simple repetitive tasks with limited public contact." A.R. 16. At Step Four, the ALJ found that Plaintiff was "unable to perform any past relevant work." A.R. 20. At Step Five, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC. A.R. 20-22.

### V. Issues Presented

Plaintiff contends that the ALJ erred at Steps Four and Five of the sequential evaluation process. Specifically, the court will consider the following issues:

1. Whether the findings on RFC were supported by substantial evidence and whether the ALJ improperly gave weight to Plaintiff's examining and nonexamining physicians; and
2. Whether the ALJ improperly evaluated Plaintiff's subjective complaints.

## VI. Standard of Review

The ALJ's underlying determination "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted). "Substantial evidence" is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id.* If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, resolving ambiguities, and drawing inferences logically flowing from the evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982); *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

When a claimant reapplies for benefits based on the same impairments assessed in a previously denied claim, the ALJ in the latter case applies the former ruling and presumes the claimant is not disabled. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). This presumption of non-disability serves as the SSA's equivalent of collateral estoppel. *See id.* To overcome this presumption, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* The Ninth Circuit has explained that "[t]he claimant need not . . . demonstrate that his medical or psychiatric condition has worsened to show changed circumstances. Other changes

9

suffice[,] . . . [f]or example, a change in claimant's age category . . . [or] where the claimant raises a new issue, such as the existence of an impairment not [previously] considered." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996) (citations omitted). If the claimant fails to prove changed circumstances, the ALJ will find her non-disabled with respect to any subsequent unadjudicated period of alleged disability. *See id.*[3]

## VII. Discussion

**A. Evaluation of Medical Evidence Regarding Plaintiff's RFC**

The ALJ determined that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels, but cannot be exposed to hazards and is limited to simple repetitive tasks with limited public contact." A.R. 16. Plaintiff contends that the ALJ erred in determining Plaintiff's RFC because the ALJ improperly weighed the medical opinions of the physicians in order to obtain a medical opinion to support the ALJ's non-disability finding. Specifically, Plaintiff argues that the ALJ should have given more weight to the opinions of Drs. Lewin and Dolnak and less weight to the opinions of Drs. Scott and Spivey.

When reviewing an ALJ's medical opinion determinations, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians"); and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). *See Lester*, 81 F.3d at 830. A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *Id.* Drs. Dolnak, Scott, and Spivey are examining physicians, whereas Dr. Lewin is a nonexamining physician.

The ALJ is entitled to resolve conflicts in the medical evidence. *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987). However, to reject the opinion of an uncontradicted treating or

---

[3] The ALJ noted that "[a] prior decision [dated August 26, 2005] prevents the claimant from now asserting that she was disabled through the date of that decision, and it creates an ongoing presumption that she was able to work beyond the date of that decision (or the adjudicated period)." A.R. 12-13. However,"[t]he prior decision dated August 26, 2005 is not available, and thus [the ALJ] assume[d] change circumstances beginning August 27, 2005." A.R. 13.

examining physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see also* § 416.927(d)(2); SSR 96-2p, 1996 WL 374186. If another doctor contradicts a treating or examining physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating or examining physician's opinion. *Lester*, 81 F.3d at 830-31. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. A nonexamining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990), though it may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2002) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion more consistent with the record as a whole generally carries more persuasiveness. *See* §416.927(d)(4).

      The ALJ noted that he accorded "great weight" to the opinions of "consultative psychologists Dr. Scott and Dr. Spivey because their opinions appear to be the most consistent with the record as a whole." A.R. 19. The ALJ's RFC finding was consistent with the conclusions of Dr. Scott and Dr. Spivey. Dr. Scott, an examining physician, concluded that Plaintiff would be able to understand and carry out both simple and complex instructions, respond appropriately to coworkers, supervisors, and the public, and deal with the usual work stressors. A.R. 936. Dr. Spivey concluded that Plaintiff should be able to work based on the level of her psychological functioning, and stated that Plaintiff tended to over-endorse her symptoms. A.R. 1352. The ALJ's finding was also consistent with the opinion of Dr. Kravatz, a State agency medical consultant who reviewed Plaintiff's medical records, who concluded that Plaintiff could sustain attention and concentration for simple work for two-hour increments during a normal workday and workweek and relate to supervisors and coworkers, but that she would likely function best in an environment with reduced public contact. A.R. 837, 840.

The ALJ properly accorded "little weight to CE Dr. Dolnak's opinion that the claimant could not sustain full-time employment," because "as noted by Dr. Kravatz in October 2008, during Dr. Dolnak's examination the claimant was pleasant, cooperative, and not agitated, with normal speech and mildly anxious mood/affect; thought content was clear and goal oriented, memory was intact, and there was only mild difficulty in concentration; at the time, she was not receiving any mental health treatment." A.R. 19. Dr. Dolnak reported that Plaintiff experienced anxiety and panic attacks in groups or crowds, but these claims were contradicted by Plaintiff's testimony and the reports of the other examining physicians that Plaintiff went shopping, took walks, visited her boyfriend's parents, and attended church, which the ALJ noted that Dr. Kravatz had mentioned in her opinion. A.R. 19. Furthermore, the ALJ was entitled to give less weight to Dr. Dolnak's report due to Plaintiff's poor credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (discounting physical capacity evaluation that relied on subjective information from claimant, whom ALJ found lacked credibility and exaggerated symptoms).[4]

The ALJ decision to reject the opinion of medical expert Dr. Lewin for being inconsistent with the record as a whole is also supported by substantial evidence. A.R. 19. Dr. Lewin's testimony that "full-time work would be impossible" for Plaintiff was premised on her "repetitive series of trips to the emergency room," but Dr. Lewin admitted, and the medical record as a whole reflects, that Plaintiff's treating physicians never observed any of the postictal manifestations that she alleged, casting doubt on Plaintiff's need for the emergency room visits. A.R. 52. In addition, just as the ALJ concluded with respect to Dr. Dolnak's opinion, the ALJ was entitled to give less weight to Dr. Lewin's opinion due to Plaintiff's poor credibility. Finally, because Dr. Lewin is a nonexamining physician, the ALJ was entitled to give Dr. Lewin's opinion less weight than the opinions of examining physicians Dr. Scott and Dr. Spivey. *Lester,* 81 F.3d at 830.

On balance, a reasonable mind could agree with the ALJ's RFC assessment, and therefore the assessment was supported by substantial evidence in the record.

**B. Plaintiff's Credibility**

---

[4] The ALJ's finding that Plaintiff's subjective complaints were not credible is supported by substantial evidence, as discussed below.

12

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's . . . statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." A.R. 20. Plaintiff argues that the ALJ erred in discounting Plaintiff's symptom reporting as not credible.

An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5) (A)). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.* at 972 (quotations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (en banc) (citations omitted). Absent affirmative evidence that the

claimant is malingering,[5] the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1283-84.

The ALJ gave several reasons for failing to fully credit plaintiff's testimony. First, the ALJ noted that there was "conflicting evidence regarding the claimant's drug use." A.R. 20. At the hearing, Plaintiff stated that she had previously been addicted to alcohol *and* marijuana; however, she told Dr. Spivey only that she "had an alcohol problem and quit 19 years ago," and she reported to Dr. Dolnak that she did not have a history of alcohol or substance abuse. In addition, numerous hospital records indicate her treating physicians' concerns that Plaintiff's actions were motivated by drug-seeking behavior, evidenced by the absence of postictal manifestations and the timing of Plaintiff's visits to the emergency room. The ALJ found that Plaintiff "was not particularly credible in talking about her history of prescription medication addiction, which appears to be ongoing." A.R. 20. As the medical evidence of record indicates that Plaintiff misrepresented her drug and alcohol history to her examining physicians and appeared to engage in drug-seeking behavior, the ALJ properly considered this as a reason for finding Plaintiff not credible.

Second, the ALJ found that "Dr. Spivey's observation that the claimant over-endorsed her symptoms undermines [Plaintiff's] credibility." A.R. 20. Plaintiff argues that this finding overlooks Plaintiff's good efforts in taking two unrelated tests, A.R. 1351, but does not argue why this fact is relevant to the outcome of a different test, which Dr. Spivey concluded showed that Plaintiff was likely to over-endorse her symptoms. As the Ninth Circuit has found that symptom exaggeration is a valid reason for an ALJ to discount a claimant's credibility, *see Thomas*, 278 F.3d at 958 and *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), the ALJ properly found this to be a reason to discount Plaintiff's subjective testimony.

Finally, the ALJ noted that Plaintiff admitted in November 2006 that she was on probation for writing bad checks. A.R. 20, 848. Some courts have considered a claimant's criminal record relevant to a determination of credibility if it involves crimes of dishonesty. *See, e.g.*, *Nicklas v. Halter*, No. C-00-1904-CRB, 2001 WL 492461 at *5 (N.D. Cal. April 25, 2001) (crimes of

---

[5] The ALJ did not conclude that plaintiff was a malingerer.

dishonesty, including forgery and burglary, have "an indelible effect upon one's credibility"); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (crimes of moral turpitude, including showing a false identification to a peace officer and attempted robbery, are a proper basis for an adverse credibility determination).

The ALJ provided three valid reasons for finding Plaintiff not credible. Accordingly, the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony.

### VIII. Conclusion

Based on the foregoing reasons, the court finds that the ALJ's decision that Plaintiff was not disabled was supported by substantial evidence in the record and in accordance with law. Accordingly, the court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

IT IS SO ORDERED.

Dated: August 27, 2013

DONNA M. RYU
United States Magistrate Judge